IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARK NEW,

    Petitioner,

    v.

WARDEN HOREL,

    Respondent.
_____/

No. C 06-3823 SI (pr)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Mark New, currently incarcerated at Pelican Bay State Prison, filed this pro se action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 concerning his 2004 conviction in Alameda County Superior Court. For the reasons discussed below, the petition is denied on the merits.

## BACKGROUND

A.     <u>The Crimes</u>[1]

On July 3, 2002, James Owusu and his wife Theresa Owusu were delivering newspapers at about 4:00 a.m. in Berkeley. Mr. Owusu was driving the couple's Nissan Sentra. At one point when Mr. Owusu was returning to the car from dropping off newspapers, Mr. and Mrs. Owusu

---

[1] The facts are taken from the preliminary hearing transcript and police reports. Resp. Exhs. B, C and H.

1

both noticed a black male, later identified as Mark New, following Mr. Owusu towards the car. When Mr. Owusu got into the car and tried to close the door, New grabbed the door and prevented it from closing. Mr. Owusu then got out of the car. New was holding what the Owusus thought was a gun. The "gun" was in fact a stun gun, which New activated. New ordered Mr. Owusu to give him all of his money, but Mr. Owusu told him he did not have any money. Mrs. Owusu began screaming, and got out of the car. As Mr. Owusu spoke with New, he saw a second black male get into the car. New then got into the driver's seat of the car, and drove away. Mr. Owusu saw a third black male running on the sidewalk in the same direction as New was driving. Mrs. Owusu, who had a different view from Mr. Owusu, saw the other two black males at the same time she first saw New.

After New drove away, the Owusus asked the occupants of a nearby house to call 911. A police officer responding to the dispatch saw a black male driving a car that matched the description of the Owusus' Nissan. When the officer turned around to follow the Nissan, it turned a corner. When the officer caught up with the Nissan, it had been stopped haphazardly against a curb, and New was walking away from it, about twenty feet from the car. By the time the officer parked his car, New had disappeared. Police then formed a perimeter and conducted a block search. During the block search, New was found in the upper doorway of a second floor apartment. New was sweating profusely, and it appeared New had been hiding or going through the grass and weeded area located at the lower level apartments because he had dirt, grass, brush, and weeds, on his head and clothes.

Police took Mr. and Mrs. Owusu, individually, to a field showup of New. Each identified New as the main carjacker. In between showups, New stated in reference to his detainment, "What was it, an auto theft or something? You act like someone got killed or something." Exh. H at 7. To that point, no mention of an auto or an auto theft had been made to New. Id.

A bystander, Victor Lucini, saw the carjacking from his truck, parked nearby. His version of the crime and the carjackers corroborated the Owusus' descriptions. However, Mr. Lucini was unable to identify New in a field showup.

B.      Case History

The Information filed August 9, 2002 charged New with two counts of carjacking, and attempted robbery, with enhancements for use of a deadly weapon. Exh. G at 4-6; See Cal. Penal Code §§ 215(a), 211, 12022(b)(1). The Information alleged New had eight prior felony convictions (i.e., a 2002 conviction for a non-sufficient funds check, a 1999 conviction for grand theft of personal property, a 1994 conviction for first degree residential burglary, two 1994 convictions for assault with a deadly weapon by means likely to produce great bodily injury, a 1994 conviction for violating Penal Code § 148(a), a 1994 conviction for resisting executive officer, and a 1991 conviction for unlawful sexual intercourse), as well as two prison terms in connection therewith. Id. at 7-10.

New initially was represented by the public defender's office but eventually retained private attorney Linda Riback in January 2003. The case was set for trial but was continued several times. Eventually, the case received an April 20, 2004 trial date. On April 20, 2004, the court ruled on the parties' motions in limine, discussed New's prior convictions with counsel in New's presence, and recessed for the evening with the matter to resume the next morning for further in limine motions and trial. CT 115. The next morning, after unsuccessfully asking for 7 years in exchange for a guilty plea, New decided to change his plea. Resp. Exh. D, 4/21/04 RT 1-2. Pursuant to a plea bargain, New pleaded no contest to one count of carjacking, and admitted the allegations for sentence enhancements for use of a weapon, one prior serious felony conviction, and two prior prison terms.

Four months later, when the date set for sentencing arrived on August 19, 2004, New (still represented by attorney Riback) filed a motion to withdraw his plea, arguing he entered his plea without full understanding of the consequences of the plea. CT 124-129. New also claimed his plea was coerced because at the time of his plea, he was suffering from "heart throbbing" and was taken by surprise at the severity of the 14-year offer, and accepted the plea in order to get out of the courtroom. At the hearing, New expanded his plea coercion allegations to include that counsel had offered him money and to visit him in prison. Resp. Exh. D, 8/17/04 RT 5-10. The court denied the motion, and sentenced New to fourteen years in prison pursuant to his plea

3

agreement. Id. at 130-32, Exh. E at 10-21. New did not directly appeal from his conviction, but did file unsuccessful habeas petitions in state courts, including the California Supreme Court. New then filed this action pro se seeking writ of habeas corpus. The petition raises three ineffective assistance of counsel claims relating to New's guilty plea.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred within this judicial district, in Alameda County, California. 28 U.S.C. §§ 84, 2241(d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required to first exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for claims raised in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d).

**DISCUSSION**

New raises three ineffective assistance of counsel claims in his petition. New asserts he received ineffective assistance of counsel on his guilty plea when (1) counsel failed to request a six-man lineup, (2) counsel failed to properly investigate, and (3) counsel coerced New to accept his plea.

A defendant who enters a guilty plea on the advice of counsel generally may attack only the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. See Hill v. Lockhart, 474 U.S. 52, 56 (1985); Tollett v. Henderson, 411 U.S. 258, 267 (1973). The defendant must satisfy the two-part standard of Strickland, 466 U.S. 668, 687 (1984), which, in the guilty plea context, requires a defendant to establish (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. at 57-59; Iaea v. Sunn, 800 F.2d 861, 864-65 (9th Cir. 1986).

Where the alleged error is a failure to investigate or discover potentially exculpatory evidence, the ineffectiveness inquiry will focus on the reasonableness of the attorney's investigation and advice regarding possible defenses. See Langford v. Day, 110 F.3d 1380, 1386 (9th Cir. 1997). Further, the determination of whether an error for failure to investigate "prejudiced" a defendant will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendations as to the plea. Hill v. Lockhart, 474 U.S. at 59.

A.     Counsel's Failure to Request a Lineup

New claims his counsel failed to request a six-man lineup. New was identified by both Mr. and Mrs. Owusu in separate field showups as the main perpetrator. Both victims also identified New at the preliminary hearing. Further, New admitted involvement in the carjacking when he spoke to police after his arrest. CT 106, Resp. Exh. H at 25-54. New waived his

5

Miranda rights and gave a statement to police, which was summarized in the police report:

> New said that he met up with (2) people he is acquainted with from East Oakland on Telegraph Ave. near Alta Bates Hospital in Berkeley. He said they met up about (45) minutes prior to being arrested. He described these people as: "Cee," BM, mid 20's, 5'9", 190-200, medium length Afro, light brown complexion, with 1-2 days of facial hair growth. Wearing black clothing and white shoes. "Ram," BM, 23, 6'1", 200, very short hair (like his), goatee, and dark brown complexion.
>
> New said that they came upon a car that was parked with the key in the ignition with the engine running (he was unsure of the streets). He said they walked towards the car and he took a position on the driver's side on the car near the front, "Ram" took a position in front of the car on the driver's side, and "Cee" took a position on the passenger side of the car near the front of the car. I drew a sketch of a parked car and asked New to show me where each person was located. ...
>
> New told me that a male approached the car and it looked like he had just delivered something. He said the male seemed afraid and asked them not to hurt him. New said he was the only person who talked to the male and told him that nobody was going to hurt him. New conceded that the circumstances were likely to invoke fear in the male because he was outnumbered 3:1, he was virtually surrounded, the aggressive way he spoke to the male, and the late hour and darkness of the encounter. New also said "Cee" simulated having a gun and then changed his story and said that "Cee" had a stun gun after I asked about the device that was recovered. New denied possessing the stun gun ... he walked away and denied ever getting into the car. ... New said that he did not see a female or any other witnesses present.

CT 106-07.

New has not provided any evidence, nor does the record show, that counsel's failure to request a lineup would have led to any favorable evidence that might have led counsel to advise him differently about the plea or might have led New to choose trial instead of a no-contest plea. Identification evidence against New was substantial. New was positively identified by the Owusus at field showups and during the preliminary hearing. New also admitted being present at the scene (although he denied he entered the car) when he talked to police after his arrest.

In addition, other circumstantial and consciousness of guilt evidence was strong. In between field showups, New stated in reference to his detainment, "What was it, an auto theft or something? You act like someone got killed or something." Exh. H at 7. Until that point, no mention of an auto or an auto theft had been made to New. Also, when police responded to the 911 call and caught up with the stolen Nissan, New was walking away from it, about twenty feet from the car. When the police formed a perimeter and conducted a block search, New was found

in the upper doorway of an apartment. New was sweating profusely, and it appeared New had been hiding or going through the grass and weeded area located at the lower level apartments because he had dirt, grass, brush, and weeds, on his head and clothes.

New fails to explain how his identity reasonably could have been contested after the victims identified him in a field show-up and he admitted being present at the scene. Moreover, a lineup might have been detrimental to New's case because it likely would have produced another positive identification of New as the perpetrator and made the prosecutor less willing to offer a plea bargain. New is not entitled to the writ on his claim of ineffective assistance of counsel in failing to demand a lineup before advising him to plead guilty. New has not shown that his counsel's performance was deficient or that he was prejudiced. The state court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law as set forth by the U.S. Supreme Court.

B. <u>Failure to Investigate</u>

New claims counsel failed to investigate and prepare for trial, listing an assortment of things she failed to do. He states that counsel did not interview witnesses identified by him or call any witnesses on his behalf, did not get a witness list from the prosecutor, did not file a "1538.5 discovery motion," did not "request" or "observe" all evidence held by the prosecution, did not retain experts on DNA or fingerprint evidence, did not hire "outside help," did not pursue evidence that a "white guy" committed the crime, did not provide New with a report on any issue, and did not intend or prepare to take his case to trial. Pet. at ¶. 11-15.

In examining the ineffectiveness claim, it is important to bear in mind that New faced a very long prison term if he lost at trial and that made the 14-year term he was offered in the plea bargain an attractive option. See Resp. Exh. D, 8/17/04 RT 12 (in considering New's motion to withdraw plea, the judge noted "the quandary, the problem that was presented here, because you [defendant] could be looking at a whole lot of time versus a bird in the hand.") Neither New nor respondent explains the maximum prison sentence New faced, but it appears from the charging document that it was much, much longer than 14 years if he was convicted on all counts and all

sentence enhancement allegations were proven true. New had been charged with two counts of carjacking under California Penal Code § 215 (which carried a term of 3, 5, or 9 years each), plus attempted second degree robbery under § 211(which carried a term of 3, 4, or 6 years). Sentence enhancement allegations of use of a deadly weapon on the carjacking counts would have added one year for each under § 12022(b)(1). Sentence enhancement allegations based on his numerous prior convictions and prison terms would have added many years to the sentence, e.g., a doubling of the term for the prior conviction under § 667(e)(1), 1 year for each prior as to which § 667.5(b) applied and 5 years for each prior as to which § 667(a)(1) applied. See CT 1-4. New has not shown a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial with the prospect of a very long prison sentence.

New has failed to provide any evidence to support his assertions that attorney Riback was deficient in investigating. His claim that Riback failed to interview witnesses fails because he has not shown what witnesses should have been interviewed or what they would have said. The record does not reflect that there were any other witnesses to the events occurring around 4:00 a.m. beyond Mr. and Mrs. Owusu, bystander Victor Lucini, and co-criminals Cee and Ram. New admitted he did not see any other witnesses present. He does not assert that he provided sufficient information for counsel to find Cee or Ram, or what helpful information she would have learned from them if she interviewed them. New has not identified a single witness who could have testified on his behalf nor has he identified any favorable evidence such witnesses would have provided for his defense.

New's assertion that discovery was inadequate is contradicted by the record. Discovery was conducted by defense attorney Riback and her predecessor, the Alameda County Public Defender. See CT 59, 64, 66 (requests for continuances because of discovery considerations); Exh. G at 1-3, 11-18 (discovery requests). Although New faults counsel for failing to file a "1538.5 discovery motion," California Penal Code § 1538.5 concerns suppression motions, not discovery motions. New has not identified the materials not discovered or reviewed by his counsel. He has failed to identify further discovery that should have been conducted that would

8

have led to any favorable evidence for New's defense, and therefore counsel was not ineffective for failing to raise any further discovery motion. See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) (trial counsel cannot have been ineffective for failing to raise a meritless motion); Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999) (to show prejudice under Strickland from failure to file a motion, petitioner must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him).

New alleges counsel should have retained outside help, including a DNA or fingerprint expert. However, the record shows no DNA or fingerprint evidence was gathered, so there was no reason counsel should have retained a DNA or fingerprint expert. And he had admitted he was at the scene of the crime, even if not in the car. The record also does not support a belief that New's case was so complicated that a competent attorney would have retained outside legal help. New's counsel, Linda Riback, was an experienced trial attorney with over 20 years of legal experience. Exh. E at 11-12.

New alleges counsel should have pursued evidence showing the crimes were committed by a "white guy." Mrs. Owusu did refer to one of the three perpetrators as a "white guy" at the preliminary hearing. Exh. C at 24, 33, 43, 55, 56. Due to this error by Mrs. Owusu, New contends his counsel should have pursued evidence that a white male committed the crime because New is a black male. New fails to note that Mrs. Owusu also referred to New as "she" twice in the record, and identified New numerous times as the principal perpetrator and also described him as a "black" male. Exh. C at 57-58; Exh. C at 42, 45, 47, 52, 59, 61. The inconsistent references by Mrs. Owusu towards New as "she" and "white," as well as "he" and "black" were due to her apparent difficulty communicating in the English language, rather than for the reason that she actually saw a "white" perpetrator. The "white guy" defense would have failed because Mrs. Owusu had identified New as the perpetrator in a field showup and at the preliminary hearing, as had Mr. Owusu. There also was substantial corroborating evidence identifying New as the principal perpetrator, including New's statement to police admitting he was at the scene of the crime and his inquiry between field showups that reflected he believed

a car had been stolen.

New also claims that he was never provided with a "report on any issue." Pet. at 13. He has not identified any missing report, nor does he explain how the missing report(s) affected his view of the plea offer.

Lastly, New alleges counsel never intended or prepared to take his case to trial because she sent back half of the $4,000 attorney fee agreed to by New and counsel. Pet. at 13-15. In light of New's statement that counsel first took a retainer of $4000 to take his case to trial, the most obvious explanation for the return of the $2,000 after he pled no contest and did not go to trial was that she was returning the unearned part of the retainer. There was also evidence that counsel was prepared for trial by filing motions in limine requesting the court allow New to view all photographs and any evidence that the prosecution intended to offer and had participated in formulating a jury questionnaire.

In sum, the record does not support New's apparent belief that he felt forced to plead guilty because his attorney had not and would not prepare for his trial. New has not established his counsel's performance was deficient or that he was prejudiced due to her alleged failure to investigate or prepare. The state court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law as set forth by the U.S. Supreme Court.

C.  <u>Coerced Guilty Plea</u>

New argues his counsel coerced him into accepting his no contest plea through the use of "no less than terrorist threats" that New would "receive a sentence[] of over a hundred years." Pet. at 14.

During the change-of-plea hearing, the judge asked New whether any promises had been made to him other than what was discussed in the proceeding, to which New answered, "No." <u>Id.</u> at 11. The judge also asked New whether his decision to plead no contest was a decision New was making for himself, to which New answered, "Yes." <u>Id.</u> The written "waiver on plea of guilty/no contest" form stated, among other things: "I offer my plea of . . . "NO CONTEST"

freely and voluntarily and of my own accord, and with full understanding of all the matters set forth in the Information/Indictment and in this waiver form." CT 118. New's attorney also signed the form, confirming that she had discussed the plea, the facts of the case, any possible defenses, and the possible consequences of a plea. Id.

The superior court held a hearing on New's motion to withdraw his no-contest plea four months after the plea was entered. In his motion to withdraw his no contest plea, New claimed he entered his plea without full understanding of the consequences of the plea, and that he was coerced into pleading no contest. Exh. A at 124. New asserted that at the time of his plea, he was suffering from heart throbbing and pain, and entered his plea to get out of the courtroom. Id. at 126. In addition, New argued he was misled and taken by surprise by the 14-year offer. On the same day set for sentencing, the court held a hearing on New's motion to withdraw the plea. Exh. E at 1. The court asked New if there was anything he wanted to add to his motion. Id. at 5. New answered from a prepared statement expanding his allegations, inter alia, to include allegations that his attorney offered him money and visits in prison if he took the plea deal. Id. at 5-6. The court denied New's motion to withdraw the plea:

> I have known your attorney, Ms. Riback, for probably more years than either of us want to remember, but I expect it's somewhere between 20 to 25 to 30. I have known her in various aspects of her career and mine. I have always found her to be very straight-forward with the Court. And I don't say that about every attorney that walks in these doors. When I said I knew you had struggled with this decision about what to do, I know Ms. Riback was struggling with it, too. And I can't evaluate the case, because I wasn't there at the preliminary examination. And in fact I didn't read all of the preliminary examination. ...
>
> I can appreciate the concern you have at this point and the anxiety you have about it. And, as indicated, I think it's in Ms. Riback's brief, to discuss what the law is, the Court has to be satisfied that there is a true reason rather than somebody having second thoughts about, for whatever reason, for whatever has happened in the interim, or whoever, whatever you have read, there has to be something that tells me that it would basically be an injustice, and that your plea was in fact not freely and voluntarily given.
>
> I'm satisfied that it was freely and voluntarily given just because I was a party to that. And the language that I used and the language that you used, that on the particular day at the particular time, I even, as I said, I even said in the plea transcript that I know you had struggled with it, but you made a decision for yourself.
>
> And decisions get made, and my ruling is going to be there has not been a sufficient showing to allow you to withdraw your plea.

11

Exh. E at 10-14.

A guilty plea induced by promises or threats which deprive it of the character of a voluntary act is void. See Machibroda v. United States, 368 U.S. 487, 493 (1962). "[A]gents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant." Brady v. United States, 397 U.S. 742, 750 (1970). Coercion by a defendant's attorney or other third party also contaminates a plea. See Iaea v. Sunn, 800 F.2d 861, 866-68 (9th Cir. 1986). In situations such as New's, the "defendant might never plead guilty absent the possibility or certainty that the plea will result in a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty." Brady, 397 U.S. at 751. But the Supreme Court has refused to hold that "a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." Id. That is the situation here. New has not shown that the behavior of counsel he characterizes as coercive was anything more than counsel advising him of the harsh realities based on counsel's assessment of the case.

The state court's rejection of New's motion to withdraw the plea did not "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(d)(2) applies to intrinsic review of a state court's process, or situations in which the petitioner challenges the state court's findings based entirely on the state court record. Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004). An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to petitioner's claim, that was properly presented and made part of the state-court record. Id. at 1005.

New's arguments that he was coerced are wholly unpersuasive. His suggestion that he was surprised by the severity of the 14-year term offered is not believable because the record shows that the 14-year offer was not sprung on him that morning. The day before he changed his plea, he had been in court with counsel for the hearing on the in limine motions and other

12

matters preparatory to the commencement of trial. On the day of the change of plea, the reporter's transcript shows that it started out with New asking the court if he "could plead to all of the charges for seven years." Resp. Exh. D, 4/21/04 RT 1. The court rejected that request, explaining: "There is no way I could do that. Even to get to the figure that the D.A. offered you of 14, the D.A. would have to dismiss some things." Id. at 1-2. After a very brief discussion about the jury questionnaire, New signaled he wanted to change his plea. Id. at 2-3. After another discussion off the record, the court noted that, "before today I knew what the number involved was, but I never knew how they were going to get there." RT 4. It is simply not believable that New was surprised by the 14-year offer. Further, even if it was surprising to him, a mere offer of 14 years does not show coercion -- he could have simply rejected it.

As to New's other allegations of coercion, he fails to show he was coerced into taking the plea. His alleged heart throbbing and feelings of pain did not amount to coercion. If New felt ill and let anyone know of it, the proceedings could have been postponed. New's feelings of stress appeared to be related to the difficult decision he confronted. Virtually any guilty plea requires a defendant to admit a crime and accept the bitter pill of punishment. Who wouldn't rather not have to say "I accept" to an offer of prison time? But the fact that a defendant is forced to make a hard and unpleasant choice -- whether to plead guilty or to go forward with the trial -- does not make the choice coerced. There is no evidence in the record of any browbeating by counsel. "Mere advice or strong urging by third parties to plead guilty based on the strength of the state's case does not constitute undue coercion." Iaea v. Sunn, 800 F.2d at 868. New affirmatively stated in open court when he entered the plea that there were no extra-record promises made to get him to enter the plea. New was not a novice in the criminal justice system (as he had suffered at least eight prior felony convictions and several adverse juvenile court adjudications), and that undermines his suggestion that he did not understand the plea and its consequences and voluntarily accept the plea. New has not overcome the presumption of truthfulness of the statements he made in the written plea waiver and in court when he entered his plea that he knew what he was doing and it was his own decision. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) (citations omitted).

This court finds the state court's determination that New's allegations of coercion were not credible to be a reasonable determination based on the evidence presented in the state court proceeding. New's claim of ineffective assistance of counsel claim based on coercion is rejected. The state court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law as set forth by the U.S. Supreme Court.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: March 3, 2008

_____
SUSAN ILLSTON
United States District Judge